UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:12CV-00161-HBB

**ROBERT MELVIN LEE**                                                                                            **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**                                      **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

#### BACKGROUND

Before the Court is the complaint (DN 1) of Robert Melvin Lee ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Plaintiff has filed a motion for summary judgment (DN 17) and Defendant has filed a response (DN 18).

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 15). By Order entered January 10, 2013 (DN 16), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments on August 13, 2008 (Tr. 493). Plaintiff alleged that he became disabled on March 29, 2008 as a result of a back condition, right hip problem, post traumatic arthritis, depression, seizure, herniated disc, osteoarthritis, sleep apnea, and high blood pressure (Tr. 493, 860-861). Administrative Law Judge Katherine D. Wisz ("ALJ Wisz") conducted a hearing on March 4, 2010 in Lexington, Kentucky (Tr. 493, 1272). Plaintiff was present and represented by attorney Elizabeth Broyles (Tr. 493, 1272). Also present and testifying was Joyce P. Forrest as a vocational expert (Tr. 493, 1272).

In a decision dated May 14, 2010, ALJ Wisz evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 493-503). She observed that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009 (Tr. 495). At the first step, ALJ Wisz found Plaintiff has not engaged in substantial gainful activity since March 29, 2008, the alleged onset date (Tr. 495). At the second step, ALJ Wisz determined that Plaintiff's lumbar degenerative disc disease following fusion; chronic back pain; pronation weakness in the right ankle; obesity; generalized osteoarthritis, but worst in the right knee and right hip; residuals from a left fifth finger injury; sleep apnea; and mild depressive disorder were "severe" impairments within the meaning of the regulations (Tr. 495-496). At the third step, ALJ Wisz concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 496).

At the fourth step, ALJ Wisz found Plaintiff has the residual functional capacity to perform less than a full range of light work because he can lift, carry, push, and pull ten pounds at a time;

stand and walk for 20 minutes at a time, for two hours in an eight-hour workday; sit for 20 minutes at a time, for six hours in an eight-hour workday; he can perform limited reaching in all directions, including overhead; can perform gross manipulation but only occasional fine manipulation; he can understand, remember and carry out simple instructions, can sustain attention and concentration for two-hour segments, can tolerate interactions with coworkers, supervisors and the public on an occasional basis, and can tolerate and handle routine stress and change in the work environment (Tr. 498). Relying on testimony from the vocational expert, ALJ Wisz found that Plaintiff is unable to perform any of his past relevant work as a truck driver (Tr. 501).

Next, ALJ Wisz proceeded to the fifth step where she considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 501-502). She found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 501-502). Therefore, ALJ Wisz concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from March 29, 2008 through the date of the decision, May 14, 2010 (Tr. 502).

Plaintiff timely filed a request for the Appeals Council to review ALJ Wisz's decision (Tr. 489). The Appeals Council denied Plaintiff's request for review of ALJ Wisz's decision (Tr. 468-468B).

## CONCLUSIONS OF LAW

### A

In order to grant a motion for summary judgment, the court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue

of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Rule requires the nonmoving party to present specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(C). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994) (plaintiff not entitled to trial merely on the basis of allegations; plaintiff must present "significant probative evidence" from which jury could reasonably find for her). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict; thus, summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Celotex, 477 U.S. at 323.

B

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to

5

>     perform a significant number of jobs in the national economy?

Here, ALJ Wisz denied Plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied Plaintiff's request for review of ALJ Wisz's decision (Tr. 468-468B). At that point, ALJ Wisz's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serverices, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Services, 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

Plaintiff challenges Finding No. 3 which addresses the second step in the sequential evaluation process (DN 17, Fact and Law Summary at Page 2). He believes his anxiety and depression as well as his fatigue/sleepiness due to his pain and the side effects of medication are also severe impairments (DN 17, Fact and Law Summary at Page 2). However, Plaintiff has not

explained why ALJ Wisz should have found these additional impairments are severe within the meaning of the regulations (See, DN 17, Fact and Law Summary at Page 2 and Supporting Memorandum at Pages 1-15). It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); see also Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."). In sum, Plaintiff has waived this claim because he failed to explain why he believes each of these impairments is a "medically determinable" condition that satisfies the duration requirement and "significantly limits" his ability to do one or more basic work activities. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii) and (c), 416.909, 416.920(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).

Although ALJ Wisz did not find Plaintiff's anxiety and depression as well as his fatigue/sleepiness due to his pain and the side effects of medication to be severe impairments, she did consider these conditions in assessing whether Plaintiff retained sufficient residual functional capacity to allow him to perform substantial gainful activity (Tr. 496-498). Therefore, the Commissioner's failure to find that these conditions were severe impairments does not constitute reversible error. See, Maziarz v. Secretary of Health and Human Serv's., 837 F.2d 240, 244 (6th Cir. 1987).

Next, Plaintiff challenges Finding No. 4 which addresses the third step in the sequential evaluation process (DN 17, Fact and Law Summary at Page 2). Notably, he concedes that "his impairments do not meet a listed impairment when his symptoms are at baseline" (DN 17, Fact and

7

Law Summary at Page 2). However, Plaintiff argues his symptoms do meet or equal in severity a listed impairment when he experiences an exacerbation of his back pain and leg pain because he is "essentially bed-bound and cannot ambulate effectively" (DN 17, Fact and Law Summary at Page 2). Notably, Plaintiff has not identified a specific listing and explained why the evidence in the record demonstrates he meets or equals that listing (See, DN 17, Fact and Law Summary at Page2 and Supporting Memorandum Pages 1-15). Again, because Plaintiff has adverted to this claim in a perfunctory manner, unaccompanied by some effort at developed argumentation, the undersigned deems this claim waived. Layne, 192 F.3d at 566 (quoting McPherson, 125 F.3d at 995-96); see also Brindley, 61 F.3d at 509 (observing that "[w]e consider issues not fully developed and argued to be waived.").

Next, Plaintiff challenges Finding No. 5 which addresses the fourth step in the sequential evaluation process. At the fourth step in the sequential evaluation process, the Administrative Law Judge makes findings regarding the claimant's residual functional capacity, the physical and mental demands of the claimant's past relevant work, and the claimant's ability to return to the past relevant work. See 20 C.F.R. §§ 404.1520(e), 416.920(e). The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546. This finding is based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546. Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

Plaintiff challenges ALJ Wisz's residual functional capacity finding by arguing she failed to accord proper weight to the 2006 medical opinion from Dr. Reinhart, a treating physician (Tr. 271-272J); the 2007 medical opinion from Dr. Qadir, a treating physician (Tr. 413-413A); and the 2006 medical opinion from Dr. El-Naggar, a consultative examiner (Tr. 239-241) (DN 17, Supporting Memorandum at Pages 12-15). However, Plaintiff submitted these medical opinions in support of his prior applications for Disability Insurance benefits and Supplemental Security Income payments that alleged a March 1, 2005 onset of disability (Tr. 24, 33-34). Administrative Law Judge Don C. Paris ("ALJ Paris") discussed and discounted the medical opinions in his decision issued on March 28, 2008[1] (Tr. 33-34).[1]

Additionally, on March 9, 2010, the Court ruled substantial evidence in the record supported the valid reasons ALJ Paris identified for rejecting the medical opinions of Drs. Reinhart, Qadir, and El-Naggar (1:09CV-00089-EHJ; DN 14, Memorandum Opinion at Pages 3-5).[2] Thus, when ALJ Wisz issued her decision on May 14, 2010, there was no need for her to make findings regarding the weight that should be accorded to these medical opinions. Alternatively, if ALJ Wisz erred, the

---

[1]On June 5, 2009, the Appeal Council denied Plaintiff's request for review of ALJ Paris' decision (Tr. 6-7).

[1]Notably, the Court lacks subject matter jurisdiction to again review ALJ Paris' actions because ALJ Wisz expressly indicated she was not reopening Plaintiff's prior applications and Plaintiff has not raised a colorable constitutional claim (DN 17). Califano v. Sanders, 430 U.S. 99, 107-108 (1977); Blacha v. Secretary of Health and Human Services, 927 F.2d 228, 231 (6th Cir. 1990).

[2]Notably, the Court vacated the final decision of the Commissioner and remand the matter for further proceedings unrelated to these medical opinions (1:09CV-00089-EJH; DN 14, 15). Specifically, the further proceedings were to focus on Plaintiff's mood disorder and whether it should be included in an evaluation of his ability to do work (1:09CV-00089-EJH; DN 14, 15). However, pursuant to Plaintiff's request, ALJ Paris issued an Order of Dismissal on March 23, 2011 (Tr. 469, 470, 476).

error was harmless because the Court has already affirmed ALJ Paris' decision to discount the medical opinions. Heston v. Commissioner, 245 F.3d 528, 535-536 (6th Cir. 2001).

Plaintiff also takes issue with ALJ Wisz's determination that Dr. Haddad is not a treating physician (DN 17, Supporting Memorandum at Pages 12-14). Plaintiff argues although Dr. Haddad is an emergency room physician, his medical opinion should be assessed like that of a treating physician because there is a longitudinal record of examining and treating Plaintiff for different health ailments over a two year period of time (DN 17, Supporting Memorandum at Pages 12-14).

Being seen several times by the same emergency room physician, even if it is over a two year period of time, does not constitute the type of ongoing treatment relationship that the regulations envision a patient having with a treating source. 20 C.F.R. §§ 404.1502, 416.902; Smith v. Commissioner, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, the ALJ's decision to treat Dr. Haddad as an examining source is supported by substantial evidence in the record and comports with applicable law. 20 C.F.R. §§ 404.1502, 416.902.

Plaintiff also argues ALJ Wisz should have given Dr. Haddad's opinions great weight, instead of little weight, because of his expertise on the subject of the side-effects of the medications that Plaintiff was taking (DN 17, Supporting Memorandum at Pages 13-14). In pertinent part, ALJ Wisz's decision reads as follows:

> The Administrative Law Judge reviewed the residual functional capacity assessment of Imad Haddad, MD, dated March 10, 2010, but grants it little weight. (Exhibit B28F). Dr. Haddad noted the claimant has moderate to severe chronic low back pain secondary to lumbar disc disease and is status post lumbar vertebral fusion surgery with pain triggered by normal movement and daily life activities. The claimant described daily activities such as bending, stooping, walking, lifting the infant as necessary to help his legally blind wife care for their infant, helping with household chores and driving. Dr. Haddad said the claimant's impairment was chronic back pain with

10

> intermittent moderate to severe pain, with limitations emanating from this impairment attributed to the high dosage of prescribed pain relievers and anxiety medications the claimant was taking. The Administrative Law Judge also noted that Dr. Haddad's assessment was for less than a full work day and requires changing positions every thirty minutes; however, the residual functional capacity assigned allows for changing position at a more frequent interval than this.

(Tr. 500-501). Thus, her basis for discounting Dr. Haddad's opinion was the inconsistencies between the limitations in the opinion and the evidence in the record, particularly Plaintiff's own description of his daily activities. The undersigned concludes that ALJ Wisz's findings regarding the weight assigned to Dr. Haddad's opinion are supported by substantial evidence in the record and comport with applicable law. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Next, Plaintiff challenges ALJ Wisz' residual functional capacity assessment in Finding No. 5 by arguing she failed to properly consider the effects of his pain and medication (DN 17, Supporting Memorandum at Pages 10-11). Defendant argues ALJ Wisz applied the correct legal standards when she assessed the credibility of Plaintiff's subjective statements and her findings are supported by substantial evidence in the record (DN 18, Memorandum at Pages 9-11).

In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p. A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in <u>Duncan v. Secretary of Health and Human Serv's.</u>, 801 F.2d

11

847, 853 (6th Cir. 1986), applies. First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id. When the reported pain and other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, after careful consideration of the evidence, ALJ Wisz found Plaintiff's subjective statements about pain and other symptoms suggested medically determinable impairments that were of greater severity than could be shown by objective medical evidence (Tr. 496-500). Therefore, ALJ Wisz properly considered Plaintiff's level of daily activity in determining the extent to which pain is of disabling severity (Tr. 496-500). 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Secretary of Health and Human Serv's., 927 F.2d 228, 231 (6th Cir. 1990). Plaintiff's daily activities include helping to tend for a 21 month old infant, taking care of his own personal needs, helping/caring for his legally blind wife, helping with light household chores, driving, preparing simple meals, helping with outside yard work, and watching television for 30 minutes or so (Tr. 496-500). Further, ALJ Misz observed that Plaintiff drove to the hearing, a trip that took one hour and twenty minutes with one stop (Tr. 498). Plaintiff's level of daily activity, while not extensive, is not indicative of disabling pain. See Crisp v. Secretary of Health and Human Serv's., 790 F.2d 450, 453 (6th Cir. 1986).

Additionally, ALJ Wisz properly considered the frequency plaintiff sought treatment for the allegedly disabling depression in assessing his subjective complaints (Tr. 500). 20 C.F.R. §§ 404.1529(c)(3)(v) and 416.929(c)(3)(v). She observed that Plaintiff did not receive regular mental health counseling and after seeking help was non-compliant with mental health treatment from ADANTA (Tr. 500).

Another factor ALJ Wisz considered is whether there were any inconsistencies in the evidence with regard to Plaintiff's statements and the rest of the evidence in the record (Tr. 496-500). 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). For example, she observed Plaintiff's testimony, about his prescribed pain medication not completely relieving his pain, was inconsistent with his previous statements indicating he obtained relief within one hour of taking the medicine and it lasted until the next scheduled dosage (Tr. 498-499). Additionally, ALJ Wisz noted Plaintiff's testimony that he could lift no more than a gallon of milk was inconsistent with his testimony and statements indicating he tending to a 21 month old infant and helped with light household chores, both of which would involve lifting at the light exertional level (Tr. 500). Further, ALJ Wisz observed that Plaintiff's testimony about the severity of his hip pain was inconsistent with his delay in having hip replacement surgery (Tr. 499).

Notably, ALJ Wisz found the adverse side effects of Plaintiff's medications are drowsiness and sleepiness (Tr. 499). Additionally, the administrative decision in pertinent part reads as follows:

> Dealing with pain caused by lumbar disc disease would possibly lead to moderately distracting loss of concentration and some memory difficulties and cause more than mild delays in completing work tasks in a routine work setting. Further, it would reasonably result in moderate ability to remember and concentrate on a sustained basis; however, even with moderately limiting effects in this area, he watches television and he did not report any difficulty following programs or sustaining attention from beginning to end. He reads,

13

> but he indicated no difficulty following the story and plot. He keeps up with his and his wife's doctor appointments. He gave little evidence of preoccupations during his interview with the consultative examiner (Exhibit B10E, B7F). Certainly, then considering these facts, the Administrative Law Judge finds the claimant would retain the necessary ability to follow and remember simple instructions in two-hour segments consistent with the residual functional capacity assigned.

(Tr. 497). Apparently, ALJ Wisz's findings are based on the opinions of Dr. Mahoney, a consultative psychological examiner (Tr. 500).

In sum, ALJ Wisz found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain and other symptoms to the extent he testified. In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of ALJ Wisz to resolve the issue of Plaintiff's credibility. Since tolerance of pain is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the claimant, the conclusion of the Administrative Law Judge, who has the opportunity to observe the claimant's demeanor, "should not be discharged lightly." Houston v. Secretary of Health and Human Serv's., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Secretary of Health, Educ. and Welfare, 577 F.2d 383 (6th Cir. 1978)). The undersigned concludes that ALJ Wisz's findings regarding Plaintiff's credibility are supported by substantial evidence and fully comport with applicable law. Further, the undersigned concludes there is no merit to Plaintiff's challenge to the residual functional capacity finding.

Plaintiff's remaining challenges pertain to the fifth step in the sequential evaluation process. At the fifth step, the Commissioner has the burden of demonstrating there exists a significant number of jobs in the local, regional and national economies that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R.

§§404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). When a claimant's age, education, previous work experience and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden. 20 C.F.R. §404.1569, §416.969; Grid Rule 200.00; Born v. Secretary of Health and Human Services, 923 F.2d 1168, 1174 (6th Cir. 1990);Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). However, if a claimant's age, education, previous work experience and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. §§404.1566(e), 416.966(e); Born, 923 F.2d at 1174; Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). For example, if the claimant suffers from an exertional and a non-exertional impairment then the Grids may be used only as a framework to provide guidance for decision making. 20 C.F.R. §§404.1569a(d) and 416.969a(d);20 C.F.R. Part 404, Subpart P, Appendix 2, §200.00(e); Abbot v. Sullivan, 905 F.2d 918, 926-927 (6th Cir. 1990); Cole v. Secretary of Health and Human Services, 820 F.2d 768, 771 (6th Cir. 1987); Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 528-529 (6th Cir. 1981).

Plaintiff challenges Finding No. 9 that addresses the transferability of job skills (DN 17, Fact and Law Summary at Page 3). Plaintiff indicates he disagrees with Finding No. 9 for the reasons

set forth in her supporting memorandum (DN 17, Fact and Law Summary at Page 3). However, his supporting memorandum does not set forth argument in support of her position (DN 17, Supporting Memorandum at Pages 1-15). Inasmuch as Plaintiff has adverted to this claim in a perfunctory manner, unaccompanied by some effort at developed argumentation, the undersigned deems the claim waived. United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); see also Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived.").

Next, Plaintiff disagrees with Finding No. 10 (DN 17, Fact and Law Summary at Page 3). In Finding No. 10, ALJ Wisz concluded that Plaintiff could work as a surveillance system monitor, which is the only job the vocational expert found he could do with all of the limitations described by ALJ Wisz[3] (Tr. 501-502, 1299). Plaintiff argues the vocational expert's testimony that he could

---

[3]The pertinent part of the colloquy between ALJ Wisz and the vocational expert reads as follows:

> Q   Okay, if you would assume an individual of the same age, education and vocational history as the claimant, ... **who can understand, remember and carry out simple instructions,** who can sustain attention and concentration for two hours ...
>
> A   The only job category that comes to my mind that would be applicable would be as a surveillance monitor. I could give those numbers.
>
> Q   Okay.
>
> A   At least 250 at the sedentary category in the region of Kentucky, unskilled, below an -- SVP of 2 or below. And within the U.S., at least 15,000 such jobs.
>
> Q   Is there a DOT code for that?
>
> A   The DOT code, there is. I'm not sure -- let me see if I've got it. Yes. Here it is; 379367010.

16

work as a surveillance system monitor conflicts with the Dictionary of Occupational Titles ("DOT") description of that job (DN 17, Supporting Memorandum at Pages 4-6). Plaintiff contends a reversible error exists because ALJ Wisz failed to ask the vocational expert if her testimony was consistent with the DOT and then elicit from the vocational expert a reasonable explanation for the apparent conflict (DN 17, Supporting Memorandum at Pages 4-6) (citing Social Security Ruling 00-4p; Whitzell v. Barnhart, 429 F.Supp.2d 361, 365 (D. Mass. 2006); Boone v. Barnhart, 353 F.3d 203, 208 n. 14 (3d Cir. 2004)). In response, Defendant argues a violation of Social Security Ruling 00-4p has not occurred because Plaintiff has not identified an apparent, or actual, conflict between the vocational expert's testimony and the DOT job description (DN 18, Memorandum at Pages 14-16) (citing Social Security Ruling 00-4p; citing Lindsley v. Commissioner of Social Security, 560 F.3d 601, 605 (6th Cir. 2009)).

The DOT requirements for surveillance-system monitor include "Reasoning" at "Level 3." U.S. Dep't of Labor, Dictionary of Occupational Titles, 379.367–010 (rev. 4th ed.1991), 1991 WL 673244. "Reasoning" is one of the General Educational Development ("GED") requirements in a DOT job listing. Id.; Mead v. Barnhart, 2004 WL 2580744, *2 (D. N.H. Nov. 15, 2004). "Reasoning" at "Level 3" is defined as follows:

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

U.S. Dep't of Labor, Dictionary of Occupational Titles, 379.367–010 (rev. 4th ed.1991), 1991 WL 673244. However, ALJ Wisz's residual functional capacity finding and her hypothetical question

---

(Tr. 1299) (emphasis added).

to the vocational expert limited Plaintiff to jobs involving **simple instructions**[4] (Tr. 1299).

Other courts have determined that the GED requirements in a DOT listing are relevant in determining the complexity of the job. Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005); Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997); Mead, 2004 WL 2580744, *2; Cooper v. Barnhart, 2004 WL 2381515, *4 (N.D. Okla. Oct. 15, 2004); Hall v. Barnhart, 2004 WL 1896969, *2-3 (D. Me. Aug. 25, 2004). Further, other courts have concluded that a GED reasoning level of 2 or higher assumes that the claimant is capable of more than simple repetitive tasks. Hackett, 395 F.3d at 1176; Lucy, 113 F.3d at 909; Mead, 2004 WL 2580744, *2; Cooper, 2004 WL 2381515, *4; Hall, 2004 WL 1896969, *2-3.

The Sixth Circuit has concluded Social Security Ruling 00-4p "imposes an affirmative duty" on Administrative Law Judges to ask vocational experts "if the evidence that they have provided 'conflicts with the information provided in the DOT.'" Lindsley v. Commissioner of Social Security, 560 F.3d 601, 606 (6th Cir. 2009) (quoting Social Security Ruling 00-4p). Additionally, when there is an apparent unresolved conflict Administrative Law Judges **"must** elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." Social Security Ruling 00-4p, 2000 WL 1898704, *2, 3-4 (Dec. 4, 2004) (emphasis added).

Here, ALJ Wisz did not ask the vocational expert whether her opinion conflicted with the DOT description of the job she suggested. Further, she did not address the issue of a conflict in her decision. Instead, ALJ Wisz found "[p]ursuant to SSR 00-4p, the vocational expert's testimony is

---

[4]Additionally, in her decision, ALJ Wisz indicated she agreed with and accepted Dr. Mahoney's conclusion that Plaintiff's mental impairment mildly limited his ability to "understand, remember, and carry out job tasks for simple and repetitive tasks ..." (Tr. 500).

18

consistent with the information contained in the Dictionary of Occupational Titles" (Tr. 502). There appears to be no factual basis for this finding and it does not comport with applicable law because ALJ Wisz failed to inquire about a conflict between the vocational expert's opinion and the DOT. The undersigned concludes that ALJ Wisz's omission is not harmless because an unexplained apparent conflict appears to exist. Hackett, 395 F.3d at 1176; Mead, 2004 WL 2580744, *3.

Additionally, ALJ Wisz's failure to inquire about and explain the apparent conflict, between the simple instructions limitation in her hypothetical and the DOT description of the surveillance-system monitor job, precludes reliance on the vocational expert's opinion that Plaintiff could do that job. Social Security Ruling 00-4p, , 2000 WL 1898704, *2. Therefore, the final decision of the Commissioner will be reversed and, pursuant to sentence four of 42 U.S.C. § 405(g), the case will be remanded to allow the Commissioner to address the apparent conflict between Plaintiff's inability to perform more than simple instructions and the level 3 reasoning required by the surveillance system monitor job identified by the vocational expert. Hackett, 395 F.3d at 1176; Mead, 2004 WL 2580744, *3.

Next, Plaintiff challenges Finding No. 10 by arguing 250 jobs in Kentucky or 15,000 jobs nationally does not satisfy the Commissioner's burden of demonstrating he can perform work which exists in significant numbers in the national economy (DN 17, Supporting Memorandum at Pages 6-9). The Court declines to address this issue because it may be mooted by additional vocational expert testimony.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment against Defendant (DN 17) is **GRANTED**.

**IT IS FURTHER ORDERED** that the final decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with the report of the United States Magistrate Judge.

This is a final and appealable Order and there is no just cause for delay.

Copies:   Counsel